Helmut A. PAPENDICK, Plaintiff,

v.

Robert BOSCH G/m/b/h and Robert Bosch North American, Incorporated, Defendants.

Superior Court of Delaware, New Castle County.

Submitted March 16, 1978.

Decided June 20, 1978.

Edmund D. Lyons of Morris, James, Hitchens & Williams, Wilmington, and of counsel: Joseph A. McManus and Brian E. McGunigle of Coudert Brothers, New York City, for plaintiff.

S. Samuel Arsht and David A. Drexler of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants.

LONGOBARDI, Judge.

This the Court's decision on the motion of the Defendant Robert Bosch Gmbh ("RB") to dismiss the complaint for lack of jurisdiction.

Plaintiff Helmut Papendick ("Papendick"), a West German citizen permanently residing in Maryland, brought suit against RB and Robert Bosch North American, Inc. ("RBNA") to recover the finders fee he claims that they owe him in connection with the purchase by RBNA of two million shares of Borg-Warner common stock. RB is a West German corporation with its principal place of business in West Germany while RBNA, a wholly owned[1] subsidiary of RB, is a Delaware corporation with its principal place of business in Broadview, Illinois. The alleged jurisdiction over RBNA was acquired when service of process was made on RBNA's registered agent in Delaware by attaching the shares of stock RB owned in RBNA. The situs of that stock was in Delaware under the provisions of 8 *Del.C.* 169. Defendant RB has specially appeared to contest jurisdiction.

The threshold question that must be faced by this Court is whether *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) is applicable to the present case. In *Shaffer*, the United States Supreme Court held that when a state court attempted to acquire *quasi in rem* jurisdiction by sequestration (seizure) of stock owned by the Defendant, which by statute had its situs in that state, the presence of the stock alone was not sufficient to give the Court jurisdiction. Rather, the court must apply the test of "minimum contacts" as set forth in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

█ The case before this Court was commenced not by sequestration but by foreign attachment. The initial question whether *Shaffer*, which involved a case on sequestration, is applicable to a case involving attachment must be answered in the affirmative.

Even a cursory reading of *Shaffer* clearly indicates that it was establishing a general test for jurisdiction. An example of that is the following:

" . . . all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." 97 S.Ct. 2584, 2585.

The present case is analogous to *Shaffer* in several respects. In both, the Plaintiffs used the statutory attachment provisions to acquire *quasi in rem* jurisdiction with the ultimate goal of receiving monetary relief. While denominated *quasi in rem*, the realities of the situation in both cases are that Defendants ultimately would be subjected to *in personam* liability. Thus, a general reading of the Supreme Court's opinion in *Shaffer* supports this Court's belief that the *Shaffer* holding is applicable to this case.

Even the particular facts of this case and the relationship between sequestration and

---

1. At the time the suit was filed, RB owned 6.25% of the stock in RBNA with another wholly owned RB subsidiary, SIBA–Elektrik Gmbh ("SIBA"), owning the remaining 93.75%. At oral argument, RB indicated that it had acquired SIBA's interest in RBNA making RB the owner of 100% of the RBNA stock. Thus, at all times, RB was the owner, directly or indirectly, of RBNA.

foreign attachment compel this Court to decide that attachment process must meet the "minimum contacts" standard of *International Shoe.*

Foreign attachment derives from colonial times having first been enacted in 1770. *Blaustein v. Standard Oil Co.,* Del.Supr., 49 A.2d 726 (1946). Sequestration is of a more recent origin. In *Skinner v. Educational Pictures Securities Corporation,* Del.Ch., 129 A. 857 (1925), Chancery Court found that it did not have jurisdiction over a non-resident defendant because there was no equitable counterpart to foreign attachment. To remedy the situation, that court suggested that the Legislature had power to give Chancery Court a method, similar to foreign attachment at law, for proceeding against non-resident defendants. The Legislature took the court's suggestion and in the next term of the General Assembly, the first sequestration statute was passed. 35 *Del.Laws* Ch. 217 (1927). Thus, sequestration was viewed as analogous to foreign attachment and interpretations of the sequestration statute were often made by referring to the policy that prevailed in foreign attachment. *Sands v. Lefcourt Realty Corporation,* Del.Supr., 117 A.2d 365 (1955). See also Folk and Mayer, *Sequestration in Delaware: A Constitutional Analysis,* 73 Col.L.Rev. 749, 751–753 (1973). In addition, while *Shaffer* dealt with the constitutionality of sequestration, many of the inequities that the Supreme Court noted were present in the sequestration process are also present in foreign attachment. Under either procedure, the non-resident defendant is compelled to enter a general appearance if he wants to defend the case on the merits; thus, an action which began as one of *quasi in rem* jurisdiction is quickly transformed into an action *in personam.* The non-resident defendant's liability is no longer limited to the value of the seized property; instead, he is subject to the same liability as though he had been personally served. Therefore, as the Supreme Court noted in *Shaffer,* the plaintiff was able to get jurisdiction over a non-resident defendant indirectly although constitutionally he could not have gotten jurisdiction over the de-

fendant directly. 97 S.Ct. at 2583. Indicating its disapproval, the Supreme Court said:

> "The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state court jurisdiction that is fundamentally unfair to the defendant." 97 S.Ct. at 2584.

The historical connection between foreign attachment and sequestration and the existence of similar abuses under foreign attachment and sequestration mandate a finding that the proper test to be applied in determining whether this Court has jurisdiction is the "minimum contacts" test of *International Shoe.*

In deciding that *Shaffer* is applicable to the case at bar, the Court has considered Plaintiff's argument that the Supreme Court, by reason of the language set out in footnote 37 of its opinion, did not intend to have *Shaffer* apply to the present case. Footnote 37 states:

> "This case does not raise, and we therefore do not consider, the question whether the presence of a defendant's property in a State is a sufficient basis for jurisdiction when no other forum is available to the plaintiff." 97 S.Ct. at 2584, n. 37.

As a footnote, the statement must be viewed in the context of the main opinion. In that particular part of the opinion, the Supreme Court was discussing the effect its holding would have on *in rem* and *quasi in rem* actions. The court noted that the primary rationale for treating the presence of property as a sufficient basis for jurisdiction was to avoid the situation where a wrong-doer would remove his property to another state where he was not subject to *in personam* jurisdiction and thus avoid payment of his obligation. After responding to that argument, the Supreme Court then went on to say that another rationale for *in rem* jurisdiction was to " . . . avoids the uncertainty inherent in the *International Shoe* standard and assure a plaintiff of a forum." The court followed

that statement by footnote 37. When an action is an *in rem* proceeding, the most logical forum where the litigation can occur is the forum where the property is located. In the text of the main opinion, the Supreme Court went on to say:

"We believe, however, that the fairness standard of *International Shoe* can be easily applied in the vast majority of cases. Moreover, when the existence of jurisdiction in a particular forum under *International Shoe* is unclear, the cost of simplifying the litigation by avoiding the jurisdictional question may be the sacrifice of 'fair play and substantial justice.' That cost is too high." 97 S.Ct. at 2584.

Also of note is the Supreme Court's own reference to the article by *Folk and Mayer*, supra, where those commentators stated:

"To the extent that a nonresident lacks minimum contacts with Delaware, it is questionable whether an important Delaware public interest is served by summarily seizing property to force a nonresident to appear generally. Indeed, it may be that Delaware cannot constitutionally extend its jurisdiction that far at least if plaintiff in such a case is also a nonresident."

In light of that context, it is clear that footnote 37 does not preclude this Court from following *Shaffer*. Plaintiff's argument that "no other forum" should be read to imply "no other American forum" is not convincing nor has Plaintiff shown that there is actually no forum, other than Delaware, where suit could be brought. At the very least, Plaintiff, a German national, would be able to bring suit against RB in West Germany. The availability of a foreign forum serves the goals of fair play and substantial justice. This is particularly true where the interpretation of the contract in dispute may well be governed by West German law. Certainly, the West German courts are better equipped to interpret their own law than any American court.

Having determined that the "minimum contacts" test of *International Shoe* must govern the determination by this Court as to whether it has jurisdiction over RB, the contact of RB with this forum must be evaluated.

 The "minimum contacts" test of *International Shoe* depends on the qualitative rather than quantative nature of the contacts. In *International Shoe*, the Supreme Court stated:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure."

In testing the qualitative nature of the contacts, the relationship between the Defendant, the forum and the litigation are the central concern. 97 S.Ct. at 2580.

 From a review of the contacts between Defendant, the forum and the litigation, it is apparent that RB does not have sufficient contacts with the State of Delaware to require it to be subject to the jurisdiction of this Court.

RB is a foreign corporation. Its officers, directors and other employees have never had any contact with this State. The litigation which is presently before the Court involves a contract that was entered into between a Maryland resident and a West German citizen. The contract was not entered into in Delaware. RB does own stock in a Delaware corporation, RBNA, but the ownership of that stock has no relevance to the present litigation and the mere incorporation of a subsidiary corporation in Delaware does not create a sufficient contact with the State to expose RB to a situation which could amount to *in personam* liability. It is interesting to note that the Supreme Court impliedly rejected the argument that incorporation in Delaware " 'invokes the benefits and protections of its laws' " (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 [1958]) for that theory appears in the concurring and dissenting opinion of Justice Brennan, 97 S.Ct. at 2592. RB's sole contact with Delaware is the ownership of stock in RBNA after utilizing the incorporation laws of this State. Although the use of our incorporation laws may be a factor to be qualitatively weighed with all other factors, it is in fact the *sine qua non* for the situs of the stock in this State.

To decide that incorporation is qualitatively sufficient is not different from holding that the presence of the stock alone is enough to meet constitutional standards for jurisdiction. Such sophistry flies in the face of the practical application of the "minimum contact" standard because in this case there could be no argument for jurisdiction based on the situs of the stock unless incorporation had occurred in this State.

The Court is mindful also of the case of *Arden-Mayfair, Inc. v. Louart Corporation*, Del.Ch., 385 A.2d 3 (1978). Though that case started by sequestration involved a proceeding to clarify and enforce voting rights without monetary relief and in that respect was different, it nevertheless recognized the applicability of *Shaffer* to those proceedings.

RB's motion to dismiss is granted.

IT IS SO ORDERED.