### ISTITUTO BANCARIO ITALIANO SpA, Plaintiff,

v.

### HUNTER ENGINEERING COMPANY, INC., Efday B. V., Hans Niederer, Tools Machine-En-Gereedschappenhandel B. V., Piero Bugnone, and Aldo Bugnone, Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted Dec. 15, 1980.

Decided Feb. 26, 1981.

---

20

Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, and John M. Townsend of Hughes, Hubbard & Reed, New York City, for plaintiff.

Charles F. Richards, Jr., of Richards, Layton & Finger, Wilmington, and William A. Masterson of Rogers & Wells, Los Angeles, Cal., for defendant Hunter Engineering Co., Inc.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, and Lord, Day & Lord, New York City, for defendants Tools Machine-en-Gereedschappenhandel B. V. and Dr. Hans Niederer.

MARVEL, Chancellor:

Plaintiff, a banking corporation organized under the laws of Italy with a principal place of business in Milan, Italy, seeks rescission of the action of the defendants in causing the issuance of 190,000 shares of stock [1] of the defendant Hunter Engineering Company, Inc. a Delaware corporation with headquarters in Riverside, California, in the form of a stock dividend payable to the sole stockholder of such corporation, namely the defendant Efday B. V., a Dutch company with a place of business in Amsterdam, it being contended that such additional shares were improperly caused to be issued by Hunter to Efday at a time when the latter was already the registered holder of all of the issued shares of stock of Hunter in which plaintiff allegedly holds a security interest. Said additional 190,000 shares were, according to the complaint, thereafter sold by Efday to the defendants Tools Machine-en-Gereed-Schappenhandel B. V., a Dutch company with a place of business in Amsterdam, for the sum of $7,800,000.

As of December 23, 1978, the date of the claimed initial pledge of 10,000 Hunter Engineering Company, Inc. shares to the Finter Bank, Zurich, Switzerland in connection with plaintiff's undertaking to finance the failing Bugnone interests, whose business efforts principally in the field of aluminum,

1. Such shares were made available for issuance by the filing of a certificate with the Secretary of State of Delaware on January 30, 1980, increasing the total authorized shares of Hunter Engineering Company, Inc., from 25,000 to 200,000, the total issued shares at the time being 10,000, registered in the name of Efday B. V.

had fallen on evil days, Hunter had issued and outstanding only that number of shares of stock, all of which were owned by the defendant Efday, which shares were thereafter allegedly pledged[2] to the plaintiff following the aforesaid initial pledge to the Finter Bank for the purpose of securing the credit being extended by plaintiff to the defendant Bugnones, who were then in control of the defendant Efday and its affiliates, the latter having been incorporated for the express purpose of holding the originally issued 10,000 shares of Hunter Engineering Company, Inc.

The purpose behind the alleged improper issuance of said 190,000 additional shares of Hunter Engineering Company, Inc. to Efday carried out through the alleged conspiratorial machinations of the defendants Efday, Tools, Niederer and other directors of Hunter Engineering Company, Inc., was allegedly not only improperly to obtain credit for such defendants and other members of the Bugnone group but also drastically to diminish plaintiff's security interest in all of the issued and outstanding shares of Hunter Engineering Company, Inc. and to deprive plaintiff of its control of such corporation, plaintiff, as noted above, having been assured by Efday and the Bugnones at the time it acquired a security interest in said 10,000 shares that they constituted all of the issued and outstanding shares of stock of Hunter Engineering Company, Inc.

In addition to seeking rescission of the 190,000 shares of Hunter Engineering Company, Inc. here in issue, allegedly issued for no or at the most nominal consideration, plaintiff also seeks the granting of a preliminary injunction enjoining the voting of said 190,000 shares, the issuance of any additional shares of stock by such corporation, the registering on its books of any transfer of said 190,000 shares, the transfer by said corporation of all or a substantial part of its assets, the declaration by said corporation of a dividend on such shares of its stock, the entrance by said corporation

into a merger or reorganization, and finally the entry by said corporation into any arrangement for the providing of its services in any project in which any other defendant in this action has an interest.

In addition, plaintiff seeks the granting of a preliminary injunction directed against the defendants Tools and Neiderer as well as the defendants Piero Bugnone and Aldo Bugnone, who are at present fugitives from justice in Italy, enjoining them from disposing of any of said 190,000 shares of stock of Hunter Engineering Company, Inc. pending final hearing in this action.

The claim to the relief sought by plaintiff is premised on the contention that the initially issued 10,000 shares of Hunter Engineering Company stock, constituting all of the then issued and outstanding shares of said corporation, had been pledged by the defendant Efday to plaintiff to secure the payment of moneys allegedly advanced by plaintiff to a Luxemburg company allied with the Bugnones and that the original value of such shares should not be permitted to be drastically diminished by the improper issuance of the 190,000 shares here in issue.

Plaintiff claims, on information and belief, that the defendant Niederer, whose family is the principal owner of Tools, is currently attempting with the assistance and connivance of the defendants Efday, Tools as well as the Bugnones to arrange for the sale of all or part of said 190,000 shares of Hunter Engineering Company, Inc. to a third party without disclosing plaintiff's claim to a security interest in the originally issued 10,000 shares of Hunter.

Pending before the Court are the motions of the non-resident defendants Tools and Niederer to dismiss the complaint under Rule 12(b)(2) for lack of jurisdiction of their person and to quash service of process as to each of them, it being contended by each such non-resident that the purported service sought to be made on them violates the constitutional right of each such defendant

---

2. It is conceded that if a formal pledge has not been effected that plaintiff, in any event, holds a security interest in said shares in connection with a debt which is substantially greater than the value of said shares.

to due process and offends traditional notions of fair play and substantial justice, *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), it being contended that each such defendant lacks the necessary minimum contacts with Delaware required by the cited cases, the property in Delaware as to which such service was made on Tools under the provisions of 10 Del.C. § 365 being confined to such foreign corporation's ownership of shares of stock of a Delaware corporation, namely stock of the defendant Hunter Engineering Company, Inc.

The defendant Niederer, for his part, has moved to dismiss the complaint as to him and to quash service of process purportedly made on him under the provisions of 10 Del.C. § 3114 on the ground that this Court is without the jurisdictional capacity to bind him in this proceeding by reason of both constitutional and statutory constraints.

In support of the pending motions, it is argued that Tools is incorporated in the Netherlands and maintains its principal office in Amsterdam. Furthermore, such corporation is not authorized to do business in Delaware, having not qualified to do so through a required filing with the office of the Secretary of State of Delaware, nor has it ever considered seeking to become so qualified. Tools neither solicits, transacts nor engages in business of any kind in Delaware and owns no real or personal property within this state other than the shares of Hunter Engineering Company, Inc. here in issue. In fact, its only claimed contact with Delaware is based on the contention that the shares of Hunter Engineering Company, Inc. owned by it have their theoretical situs in Delaware (8 Del.C. § 169) although the certificates representing such shares are in Amsterdam.

Dr. Niederer, who is an attorney at law living and practicing in Zurich, also questions his amenability to service of process purportedly requiring him to appear before this Court of Delaware, pointing out that he has never been in Delaware, nor has he engaged in vicariously or conducted any business in this State. He, has, however, served as a director of Hunter Engineering Company, Inc., which is, of course, a Delaware corporation, it being noted that he resigned from the board of directors of such corporation on December 5, 1978 and was not re-elected to such board until March 17, 1980, more than five weeks after the date when the additional 190,000 shares of Hunter in question were authorized and issued on January 24, 1980.

Finally, although Hunter Engineering Company, Inc., being a Delaware corporation, has been duly served by the sheriff, it has also moved to dismiss the complaint under Rule 19 for the alleged failure properly to join indispensable parties, namely Efday and Tools, by effective service. However, inasmuch as Efday has filed an answer to the complaint herein, such motion presumably applies only to the defendant Tools.

▪ Recognizing that neither the defendant Niederer nor the defendant Tools can be shown to have any tangible contact with the State of Delaware, plaintiff contends that such non-resident defendants may nonetheless be subjected to the jurisdiction of this Court on the ground that they conspired in Europe with the defendant Hunter Engineering Company, Inc., a Delaware corporation, which allegedly committed an act in Delaware in furtherance of the alleged conspiracy, consisting of the filing of an amendment to its corporate charter which increased its authorized shares by 190,000. However, I am satisfied that in the case of *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953), the holding to the contrary reached in *Giusti v. Pyrotechnic Industries* (CA9) 156 F.2d 351 (1946) cert. denied, 329 U.S. 787, 67 S.Ct. 355, 91 L.Ed. 675 (1946), an action which permitted venue to be established for anti-trust charges against non-residents by an act of a co-conspirator performed in the forum in which the action was filed, was effectively overruled. Furthermore, in the case of *Piedmont Label Co. v. Sun Garden Packing Co.* (CA9) 598 F.2d

491 (1979), such holding was explicitly over-ruled. See also *Cascade Steel Rolling Mills, Inc. v. Tokyo Steel Manufacturing Co., Ltd.* (D.Or.1980), and *Kipperman v. McCone* (N.D.Cal.) 422 F.Supp. 860 (1976), the latter case being concerned with constitutional rights of due process as is the case here rather than venue under the federal anti-trust laws.

I conclude that jurisdiction over the defendants Niederer and Tools can not be sustained on the basis that they may have possibly conspired in Europe with Hunter Engineering Company, Inc. and others resulting in the act of filing papers in Delaware which latter action caused the authorized capital stock of Hunter to be increased by 190,000 shares. In other words, in my opinion, it would offend traditional motions of fair play and substantial justice to hold under the facts of record that the defendants Niederer and Tools could have reasonably anticipated being haled into this Court on the basis of the present record, assuming a conspiracy to have existed in Europe in the first place.

■ Next, I am persuaded that inasmuch as the gravamen of the acts complained of is that the defendants conspired to defraud plaintiff of its claim to Efday's alleged pledge of all of the stock of Hunter Engineering Company, Inc., that plaintiff's case must necessarily depend for its basic strength on the validity of the pledge itself tested by the law of the country where it was made, *Pauley Petroleum, Inc. v. Continental Oil Company*, Del.Ch., 231 A.2d 450 (1967) aff'd Del.Supr., 239 A.2d 629 (1968), *Cheff v. Athlone Industries, Inc.*, Del.Supr., 233 A.2d 170 (1967), and *U. S. Industries, Inc. v. Gregg* (D.Del.) 348 F.Supp. 1004 (1972) rev'd on other grounds (CA3) 540 F.2d 142 (1976) cert. denied 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977).

In other words, not only the validity of the claimed pledge but the alleged tortious injury inflicted on said alleged pledge took place, if at all, in Europe, the only act which occurred in Delaware in connection with such transaction being valid itself, namely the filing under Delaware law of a certificate increasing the total authorized shares of Hunter Engineering Company, Inc. by 190,000. I conclude that neither the defendant Niederer nor the defendant Tools can be said to have consented in any manner to be sued in Delaware solely on the basis of their business dealings in Europe with a Delaware corporation. Here, unlike the situation in *Papendick v. Robert Bosch GmbH*, Del.Supr., 410 A.2d 148 (1979) cert. denied, 446 U.S. 909, 100 S.Ct. 1837, 64 L.Ed.2d 262 (1980), a Delaware corporation was not formed in this case for the express purpose of consummating the lawful acquisition of a company in which transaction plaintiff had a lawful claim for a finder's fee. The mere fact that Tools has purchased shares in a Delaware corporation in the organization of which it took no part or from whose incorporation it could not have expected to gain any benefit offered by the Delaware General Corporation Law does not, in my opinion, make such foreign corporation amenable to the jurisdiction of this Court.

■ No doubt recognizing the constitutional deficiencies in the purported substituted service sought to be made on the defendants Niederer and Tools under the provisions of 10 Del.C. § 3114 and § 365, plaintiff has additionally sought to serve such non-residents under the provisions of 10 Del.C. § 3104(c)(4). However, such statute is concerned with an act or omission in Delaware which causes a tortious injury in this jurisdiction, and here it is clear that no tortious act took place in Delaware, the filing of the amendment to the certificate of incorporation of Hunter Engineering Company, Inc., increasing the total authorized shares of such corporation by 190,000 shares, not being an unlawful act per se, the mere fact that such amendment was required as a preliminary to the allegedly tortious act committed in Europe being irrelevant no injury having occurred in Delaware, *Data General Corp. v. Digital Computer Controls, Inc.*, Del.Ch., 357 A.2d 105 (1975). Furthermore, plaintiff, the injured party, according to the complaint, was never present in Delaware during the period

when the wrongs complained of occurred and the injury complained of could not therefore possibly have occurred in Delaware, the wrong complained of, namely the issuance of the 190,000 additional shares to Efday followed by their sale to Tools having taken place in Europe.

■ With further reference to the matter of purported service on the defendant Niederer under the provision of 10 Del.C. § 3114, it is clear from a reading of such statute that it is applicable only when a non-resident director is a necessary or proper party to an action brought by or on behalf of or against a Delaware corporation, or where the cause of action against the non-resident director of a Delaware corporation is based on such director's alleged breach of a fiduciary duty to his corporation and its stockholders in his capacity as director, *Hana Ranch, Inc. v. Lent*, Del.Ch., 424 A.2d 28 (1980).

First of all, it is clear that the absence of the defendant Niederer from this action would not preclude plaintiff in a proper forum from obtaining the basic relief which it seeks, namely the cancellation of the 190,000 shares of Hunter stock now registered in the name of Tools, *Condec v. Lunkenheimer Co.*, Del.Ch., 230 A.2d 769 (1967). In short, the defendant Niederer has no direct interest in the shares in question and his presence in this action for rescission would be clearly unnecessary. By the same token under the cited rule he is not even a proper party inasmuch as he neither possesses any right nor bears any duty relating to the stock which plaintiff seeks to have cancelled, Rule 19. Accordingly, the only basis on which plaintiff can hope to have the non-resident defendant Niederer required to answer to charges in this Court is on the basis that as a director he breached his duty to Hunter Engineering Company, Inc. a Delaware corporation. Thus, even if it were to be assumed that the defendant Niederer was a party to an alleged conspiracy to defraud plaintiff by causing the issuance of 190,000 additional shares of Hunter Engineering Company, Inc., he did not become a director again of Hunter Engineering Company, Inc., until March 17, 1980 or after the acts complained of had taken place. And although it is conceded that the certificate for 190,000 Hunter shares registered in the name of Efday was cancelled after March 17, 1980 and a new certificate thereafter issued in the name of the purchaser, Tools, such acts were performed by the secretary and president of Hunter and not by such corporation's board of directors. Because the defendant Niederer took no action in his capacity as a director of Hunter Engineering Company, Inc. concerning the issuance of the 190,000 shares of such corporation to Tools, I conclude that he is not amenable to the jurisdiction of this Court under the provisions of 10 Del.C. § 3114, *Hana Ranch, Inc. v. Lent*, supra.

■ In conclusion and apart from the failure properly to serve the defendant Niederer it is clear that in the absence from the case of Tools, the record holder of 190,000 shares of Hunter here in issue and clearly an indispensable party to an action to cancel such shares, *Bryan v. Curtiss Southwestern Company*, Del.Ch., 40 A.2d 712 (1945), *Elster v. American Airlines, Inc.*, Del.Ch., 106 A.2d 202 (1954), and *Sergeson v. Delaware Trust Company*, C.A.No. 5650, Del.Ch., October 5, 1979 aff'd, Del.Supr., 413 A.2d 880 (1980), that the complaint must be dismissed.

■ In short, I am not persuaded that the use by the defendants Tools and Niederer and others of the defendants of provisions of the Delaware General Corporation Law which permit directors' meetings to be carried on by telephone, permit the use of a written consent in lieu of a stockholders' meeting as well as the amending of a certificate of incorporation and the payment of stock dividends, establish the required minimum contacts of such parties with the State of Delaware needed to meet the constitutional tests of due process called for in *Shaffer v. Heitner, supra*. Compare *Bolger v. Northern Lumber Co.*, Del.Ch., C.A. 5329, January 16, 1978, and *Arden-Mayfair, Inc. v. Louart Corporation*, Del.Ch., 385 A.2d 3 (1978).

In conclusion, I am not satisfied that the undecided question which was not raised in *Shaffer v. Heitner*, supra, (footnote 37) namely whether the mere presence of a non-resident's property in Delaware would be a sufficient basis for jurisdiction "* * * when no other forum is available to the plaintiff * * * " is required to be answered in this case inasmuch as the non-residents Tools and Niederer may both be sued in Europe, and the Supreme Court of the United States did not limit other available forums to the United States. Compare *Papendick v. Bosch*, Del.Super., 389 A.2d 1315 (1978).

On notice, a form of order dismissing the complaint herein for the reasons stated in this opinion may be submitted.