HALLIBURTON COMPANY, a Delaware corporation, Halliburton, Energy Services, Inc., a Delaware corporation, and Kellogg Brown & Root, Inc., a Delaware corporation, Defendants Below, Appellants,

v.

HIGHLANDS INSURANCE GROUP, INC., a Delaware corporation and Highlands Insurance Company, a Texas corporation, Plaintiffs Below, Appellees.

No. 156,2001.

Supreme Court of Delaware.

Submitted: April 11, 2002.
Decided: July 11, 2002.

A. Gilchrist Sparks, III and Richard D. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Harry M. Reasoner, John L. Murchison, Jr., Karl S. Stern, and Bruce A. Blefeld, of Vinson & Elkins L.L.P., Houston, TX, of counsel, for Appellants.

Stephen E. Herrmann, of Richards, Layton & Finger, P.A., Wilmington, DE; William C. Wilkinson and John T. Sunderland, of Thompson Hine L.L.P., Columbus, OH, of counsel, for Appellees.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

## PER CURIAM:

This matter is before us again, this time on appellants' motion for reargument. The procedural history of this case can be summarized briefly as follows.

Highlands Insurance Group, Inc. and its affiliate (collectively referred to as "Highlands") brought this action against Halliburton Company and its affiliates (collectively referred to as "Halliburton") in the Court of Chancery for declaratory and injunctive relief. Both of the principal corporate entities are Delaware corporations. The central issue in the case ultimately involves insurance coverage for potential exposure of Halliburton to substantial asbestos claims. The contractual issue decided by the Court of Chancery and affirmed by an en Banc decision of this Court is that the operative documents that effected a spinoff of Highlands by Halliburton (the "Spin-off Documents") terminated the relevant Highlands insurance policies (the "Fixed Cost Policies") that may otherwise have provided coverage to Halliburton for its potential exposure to the asbestos claims.

The Court of Chancery decided the case adversely to Halliburton on cross motions for judgment on the pleadings. The factual background and the basis for the decision are set forth in detail in a memorandum opinion of the Court of Chancery which we incorporate herein by reference.[1]

This Court originally heard oral argument before a panel[2] and then had reargument en Banc.[3] The Court en Banc affirmed the judgment of the Court of Chancery on the basis of that Court's memorandum opinion.[4] Halliburton moved for reargument. At our request, a response to the motion was filed by Highlands. In this per curiam opinion we deny the motion for reargument.

Halliburton raises several issues in its motion for reargument. First, it contends that the Court of Chancery "clearly misstated the settled Delaware law on the right to plead alternatively with regard to the ambiguity of a contract." Second, Halliburton contends that the Court of Chancery and this Court erred by not addressing why the Halliburton defendants "are, as a matter of law on the pleadings, not entitled to have the opportunity to prove mutual mistake." Fundamentally, Halliburton insists that the Court of Chancery not only was wrong as a matter of law on the central issue of the interpretation of the Spin-off Documents, but also that the case is of such importance that "the stature and national position of this Court calls for a written opinion to deal with a case of this magnitude on plenary review."

On the matter of the necessity for this Court to write an opinion, there is no need to do so. We thoroughly reviewed the decision below, the briefs of the parties and the contentions of counsel at oral argument. We considered carefully and thoroughly every argument and every authority advanced by the parties. When a trial court, as in this case, has correctly stated the facts and the law on the central

---

1. *Highlands Ins. Group v. Halliburton,* Del. Ch., No. 17971, 2001 WL 287485 (March 21, 2001) ("Mem. Op").

2. *See* Supr. Ct. R. 16(a) ("There shall be oral arguments only in those appeals and original proceedings designed by the Court.").

3. Supr. Ct. R. 4.

4. *Halliburton v. Highlands Ins. Group,* Del. Supr., No. 156,2001, 2002 WL 423486, Veasey, C.J. (March 13, 2002).

and dispositive issue, there is usually no need for this Court to restate the same analysis as that of the trial court, even if we would have stated differently some peripheral issues of which Halliburton now complains. We have again reviewed Halliburton's claims on reargument and we again adopt the analysis of the Court of Chancery on the central and dispositive issue-namely, that the Spin-off Documents unambiguously show that the Fixed Cost Policies at issue here were terminated at the closing of the Spinoff.

Here the central question is one of contract interpretation. This case decides no landmark or novel corporate issues or matters of significant precedential value. The decision of the Court of Chancery, which we have adopted on the merits of the contractual dispute, marks no new advance in, or departure from, established Delaware law. To be sure, the outcome of this case may well affect the parties in a very significant economic manner. Many cases in the Delaware Courts, of course, have that effect. But that does not mean that this Court, as an appellate court, having comprehensively examined and analyzed the record, the authorities and the decision of the trial court, should rewrite in our words what a learned and very sophisticat-

ed trial judge has correctly written in his decision on the central issue in the case.

■ On the merits of the central issue, we agree with the Vice Chancellor's opinion: All insurance policies between Highlands and the Halliburton entities, other than the policies that were specifically excepted from the effect of those termination provisions, were terminated as a result of the Spin-off Documents.[5] Contrary to Halliburton's argument, the Insurance Products and Services Agreement (the "IPSA" and one of the Spin-off Documents) does not identify the Fixed Cost Policies as having been excepted from the termination. This is the key issue that Halliburton argued before this Court as well as the Court of Chancery. It was thoroughly considered by both Courts, neither of which accepted Halliburton's argument. The motion for reargument predicated on this point is simply a replowing of old ground.[6]

■ Halliburton argues in its motion, as it had already argued before the Court of Chancery and this Court, that the Spin-off Documents are ambiguous and the trial court should have examined Halliburton's proffered extrinsic evidence.[7] We agree

---

5. *Id.* at 9–12.

6. Halliburton relies on Section 3.9 of the IPSA as the "lynchpin" of its position, and claims that because the Vice Chancellor did not mention that section he did not address Halliburton's argument based on that section. Although the Vice Chancellor did not cite the section number of Section 3.9 he nevertheless rejected Halliburton's argument by paraphrasing the language of Section 3.9:

Section 3.18 of the Investment Agreement, provides that the termination of certain insurance polices [sic] shall occur at the closing of the Spinoff "except as contemplated by any of the Distribution Instruments [defined to include the IPSA]." And the IPSA, defendants contend, clearly identifies the

Fixed Cost Policies and provides that Highlands will remain bound by the terms of those policies after the Spinoff.
I disagree. It is undisputed that Sections 3.18 and 6.05 of the Investment Agreement (the "dual termination provisions") expressly provide that all insurance policies between Highlands and the defendants terminate when the Spinoff closes, except for policies that were specifically excepted from the effect of those termination provisions.
*Id.* at 9 (footnote omitted).

7. Halliburton also claims on reargument that this Court may have been influenced by an incorrect factual representation made by Highlands' counsel at oral argument before us. That representation had to do with the

with the Vice Chancellor that the documents are not ambiguous.[8] Accordingly extrinsic evidence was properly excluded.[9]

Halliburton claims that, contrary to Court of Chancery Rule 8(e)(2), the Court of Chancery would not permit it to plead in the alternative. Halliburton claims that it was precluded from arguing that the Spinoff Documents unambiguously favor Halliburton or, alternatively, that they are ambiguous and Halliburton should be permitted to offer extrinsic evidence.[10] As we read the Vice Chancellor's opinion, he rejected on the merits the alternative argument that the documents were ambiguous. The decision of the Court of Chancery

establishes no rule that one is precluded as a matter of law from arguing in the alternative. There is no doubt that alternative pleading, if clearly set forth as such, is permissible.[11]

Finally, Halliburton argues that it was improperly precluded from arguing the defense of mutual mistake that it had pleaded. But, as we read the Vice Chancellor's opinion, he did address Halliburton's mutual mistake argument and rejected it. Without endorsing the entirety of the Vice Chancellor's language, he was correct, in our view, in his rejection of Halliburton's mutual mistake argument.[12]

question whether Highlands honored the Fixed Cost Policies for four years because of a clerical error. Whether or not that representation was correct, it played no part in our decision.

8. *Id.* at 15.

9. *See Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del.1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."); *see also* Mem. Op. at 20–21 ("[P]arol evidence cannot be used to interpret a contract that facially is unambiguous.").

10. In the context of ruling that the documents are unambiguous and that, therefore, it would not be permissible to consider extrinsic evidence, the Court of Chancery noted Halliburton's principal position that there was no ambiguity and then observed that it "cannot be heard to argue that the documents are unambiguous, and at the same time argue that they are ambiguous." Mem. Op. at 20. When read in the context of the court's properly supported conclusion that the documents were unambiguous, this sentence was unnecessary. To the extent that it may erroneously be inconsistent with Rule 8(e)(2), the error is harmless. The issue is moot, in any event, given the fact that we have affirmed the central conclusion of the trial court that the Spinoff Documents unambiguously show that the Fixed Cost Policies were terminated.

11. See Court of Chancery Rule 8(e)(2), which provides as follows:

A party may set forth 2 or more statements of a claim or defense alternately or hypothetically, either in 1 count or defense or in separate counts or defenses. When 2 or more statements are made in the alternative and 1 of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of 1 or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency. All statements shall be made subject to the obligations set forth in Rule 11.

12. The Vice Chancellor's essential holding on mutual mistake is stated as follows:

First, in this case there can be no mutual mistake, because as a legal matter Highlands had no independent ability to negotiate the Spinoff agreements. Before the Spinoff Highlands was controlled and 100% owned by Halliburton. Before the Spinoff Halliburton was the only party involved in the negotiation. Therefore, any mistake made would be Halliburton's alone. It is an established rule that a mistake by one contracting party, coupled with ignorance thereof by the other party, is not a "mutual mistake." That result is even more compelled where, as here, there was (legally speaking) no "other" contracting party. Highlands had no input into negotiating or drafting the agreements executed in connection with the Spinoff, and thus, it lacked any ability to change the terms of the Spinoff or to make a "mistake" about what

Having thoroughly considered all the issues and arguments raised by the Halliburton defendants on direct appeal and in this motion for reargument, we deny the motion for reargument. The mandate shall issue immediately.

those terms meant. Because in this case no mutual mistake was legally possible, no extrinsic evidence of such a mistake can be considered.

Mem. Op. at 19–20 (footnotes omitted). Although Halliburton does not articulate its argument as such, it is essentially based, in part, on an apparent confusion in some of the language of the Vice Chancellor's opinion. *Id.* To the extent that the memorandum opinion may have erroneously conflated the analytically distinct issues of precluding extrinsic evidence to interpret an unambiguous contract with the issues involved in an action to reform based on mutual mistake, any such error is harmless in the context of this case.