# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EXTELL DV LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0683-SG |
| | ) | |
| VAN A. HEMEYER and BLUE LEDGE | ) | |
| RESORT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: January 30, 2020
Date Decided: April 23, 2020

Thomas W. Briggs, Jr and Jarett W. Horowitz, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; OF COUNSEL: John R. Lund and Adam E. Weinacker, of PARSONS BEHLE & LATIMER, Salt Lake City, Utah, *Attorneys for Plaintiff Extell DV LLC*.

Catherine G. Dearlove and Andrew J. Peach, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Scott A. Hagen, Gregory S. Roberts, and Beth J. Ranschau, of RAY QUINNEY & NEBEKER P.C., Salt Lake City, Utah, *Attorneys for Defendants Van A. Hemeyer and Blue Ledge Resort, LLC*.

GLASSCOCK, *Vice Chancellor*

This case is brought by a Delaware LLC, which is the managing member and majority equity holder of three other Delaware LLCs (the "Companies"). The Defendants are the other member of each of the Companies, together with that member's principal, whom plaintiff accuses of breaching contractual duties imposed by the Companies' respective LLC agreements, concerning ownership of real property in Utah. The Defendants are not Delaware residents, and have no connection to Delaware other than having (per the Plaintiff) negotiated the agreements that ultimately led to the Companies' creation as Delaware entities. Are the Defendants personally subject to the jurisdiction of the Delaware courts?

Notwithstanding the fact that a prior suit on related issues involving these principals is pending in state court in Utah, the Plaintiff chose to bring this Action in Delaware. It contends that the negotiation of the LLC Agreements, which led to the creation of Delaware entities, constituted transacting business "in" Delaware sufficient to invoke Delaware's Long Arm Statue.[1] The Defendants have moved to dismiss for lack of personal jurisdiction. Alternatively, they seek a stay in favor of the Utah action.

Because I find that the actions of the Defendants, as alleged by the Plaintiff, are insufficient to invoke the Long Arm Statute, I will dismiss this matter unless the Plaintiff elects to take jurisdictional discovery. Accordingly, I need not reach here

---

[1] 10 *Del. C.* § 3104.

the Defendants' arguments regarding whether exercise of jurisdiction in these circumstances would violate due process, nor do I address their request for a stay.

## I. BACKGROUND[2]

*A. The Parties and Relevant Non-Parties*

Plaintiff Extell DV LLC ("Extell") is a Delaware limited liability company.[3]

Defendant Blue Ledge Resort, LLC ("BLR") is a Nevada limited liability company.[4]

Defendant Van A. Hemeyer ("Hemeyer") is an individual who is a resident of the State of Arizona, and is the manager of BLR.[5]

BLX Holdings LLC ("BLX Holdings"), BLXM Member, LLC ("BLXM"), and 32 Dominick, LLC ("32 Dominick") are Delaware limited liability companies (BLX Holdings, BLXM, and 32 Dominick together are the Companies).[6] Extell and

---

[2] Unless otherwise noted, the facts recited herein are drawn from the well-pled allegations of the Plaintiffs' Verified Complaint, D.I. 1 (the "Complaint" or "Compl."), together with its attached exhibits, and are presumed true for the purposes of Defendants' motion to dismiss. The Court may consider evidence outside of the pleadings for purpose of jurisdictional motions, as discussed in Section II, *infra*. *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[3] Compl., ¶ 7.

[4] *Id*. ¶ 8.

[5] *Id*. ¶ 9.

[6] *Id*. ¶ 10. The entity name of BLX Holdings in the Complaint contains a comma, but the entity name in BLX Holdings' LLC Agreement does not contain a comma, so I omit the comma herein. *Compare id. with* Compl. Ex. B, Amended and Restated Limited Liability Company Agreement of BLX Holdings LLC ("BLX Holdings LLC Agreement").

2

BLR are members of the Companies, and each of the Companies has no members other than Extell and BLR.[7]

*B. The Companies*

The Companies were created pursuant to a business arrangement between Extell and BLR to develop property in two counties in Utah—Wasatch and Summit—into a ski resort adjacent to the Deer Valley resort.[8] According to the Extell's Verified Complaint (the "Complaint"), Extell and BLR negotiated both the creation of the Companies and their respective limited liability company agreements dated March 14, 2018 (the "LLC Agreements").[9] Hemeyer has submitted in an affidavit that the Companies had already been formed when Extell provided drafts of the LLC Agreements to Hemeyer as manager of BLR.[10] Under all three LLC Agreements, Extell is the Managing Member and BLR is the Non-Managing Member of each of the Companies.[11] Per the LLC Agreements, Extell owns 90% of

---

[7] Compl., ¶ 10; Compl., Ex. A, Limited Liability Company Agreement of BLXM Member, LLC ("BLXM LLC Agreement"), at Schedule 1; BLX Holdings LLC Agreement, at Schedule 1; Compl., Ex. C., Amended and Restated Limited Liability Company Agreement of 32 Dominick, LLC ("32 Dominick LLC Agreement"), at Schedule 1.

[8] Compl., ¶ 13.

[9] *Id*. ¶¶ 13, 15; *see* BLXM LLC Agreement; BLX Holdings LLC Agreement; 32 Dominick LLC Agreement.

[10] Aff. of Beth J. Ranschau in Support of Defs.' Opening Br. in Support of Mot. to Dismiss, D.I. 21 ("Ranschau Aff. I"), Ex. 4, Aff. of Van Hemeyer in Support of Defs.' Opening Br. in Support of their Mot. to Dismiss ("Hemeyer Aff."), ¶ 18.

[11] Compl., ¶ 14; BLXM LLC Agreement, § 1.05; BLX Holdings LLC Agreement, § 1.05; 32 Dominick LLC Agreement, § 1.05.

3

BLXM and 32 Dominick, and 95% of BLX Holdings; BLR owns the remaining 10% of BLXM and 32 Dominick, and 5% of BLX Holdings.[12]

The LLC Agreements contemplate the development of a "Project," which is defined as "a resort containing hotels, residential condominiums, single family homes, commercial units and other uses to be determined, as well as ski lifts and ski runs, and to ultimately comprise a portion of the greater Deer Valley ski resort."[13] The Project is to be developed on three properties then held by the Companies or their affiliates: the Blue Ledge Property, the Mayflower Development Property, and the Mayflower Ski Terrain Property.[14] Along with the three properties, Extell, as Managing Member, is to "undertake such additional acquisitions . . . in connection with the development of . . . the Project as [Extell] shall determine."[15] The LLC Agreements prohibit Extell and BLR—and any "Affiliate"[16] of Extell and BLR—

---

[12] BLXM LLC Agreement, at Sch. I.; BLX Holdings LLC Agreement, at Sch. I; 32 Dominick LLC Agreement, at Sch. I.

[13] Compl., ¶ 16; BLXM LLC Agreement, at 5; BLX Holdings LLC Agreement, at 5–6; 32 Dominick LLC Agreement, at 5–6.

[14] Compl., ¶ 17; BLXM LLC Agreement, at 5; BLX Holdings LLC Agreement, at 5–6; 32 Dominick LLC Agreement, at 5–6.

[15] Compl., ¶ 18; BLXM LLC Agreement, at 5; BLX Holdings LLC Agreement, at 5–6; 32 Dominick LLC Agreement, at 6.

[16] "Affiliate" is defined in each of the LLC Agreements as "with reference to a Person, any other Person that, directly or indirectly through one or more intermediaries, Controls, is Controlled by or is under common Control with the first Person." BLXM LLC Agreement, at Section II, "Affiliate"; BLX Holdings LLC Agreement, at Section II, "Affiliate"; 32 Dominick LLC Agreement, at Section II, "Affiliate". "Person" is defined in each of the LLC Agreements as "a corporation, an association, a partnership (general or limited), a joint venture, an estate, a trust, a limited liability company, a limited liability partnership, any other legal entity, or an individual." BLXM LLC Agreement, at Section II, "Person"; BLX Holdings LLC Agreement, at Section II, "Person"; 32 Dominick LLC Agreement, at Section II, "Person."

from "acquir[ing] any interest, direct or indirect, in the Project, except through the Company or with the consent of the other Member."[17] The Complaint alleges that Hemeyer is the managing member of BLR and is therefore an "Affiliate" of BLR under the LLC Agreements.[18]

### C. The Valeo Property and the Amendments

The Complaint alleges that BLR and Hemeyer attempted to acquire land known as the "Valeo property" outside of the Companies, "after the Valeo property had been identified as a valuable future resort property for the Project."[19] The Complaint also alleges that BLR and Hemeyer "attempted to acquire the Valeo property for the purpose of leveraging a higher percentage interest for BLR in the Companies . . . ."[20] According to the Complaint, this violated Section 6.04 of each of the LLC Agreements.

After BLR and Hemeyer attempted to acquire the Valeo property, BLX Land, LLC ("BLX Land"), a subsidiary of BLX Holdings, acquired the Valeo Property.[21] On May 29, 2019, Extell provided BLR with proposed amendments to the LLC Agreements (the "Amendments") that explicitly added the Valeo property—along with other properties the Companies had acquired—to the definition of "Project" in

---

[17] BLXM LLC Agreement, § 6.04; BLX Holdings LLC Agreement, § 6.04; 32 Dominick LLC Agreement, § 6.04.
[18] Compl., ¶ 20.
[19] *Id.* ¶ 32.
[20] *Id.* ¶ 33.
[21] *Id.* ¶¶ 30–31.

the LLC Agreements.[22] Extell contends that it provided the Amendments to BLR to give BLR the opportunity to "review and approve" the Amendments, though the letter to Hemeyer stated that they "do not involve Major Matters" as defined in the LLC Agreements.[23] Extell has the "complete and exclusive authority . . . to make any and all decisions relating to the business and operation" of the Companies except where otherwise indicated in the LLC Agreements.[24] Among actions excluded from Extell's unilateral authority is any action with respect to a "Major Matter."[25] On June 10, 2019, BLR objected to the Amendments and asserted that the Amendments involve a Major Matter, "and therefore cannot be adopted without the consent of BLR."[26]

On June 17, 2019, Extell purported to unilaterally adopt the Amendments.[27] On August 26, 2019, Extell sent the purportedly executed Amendments to BLR and Hemeyer; the accompanying cover letter stated that "[b]ecause of BLR's refusal to

---

[22] *Id.* ¶ 25.

[23] *Id.*; Compl., Ex. D, Letter Re: First Amendment to Limited Liability Company Agreement of BLXM Member LLC; First Amendment to Amended and Restated Limited Liability Company Agreement of 32 Dominick LLC; and First Amendment to Amended and Restated Limited Liability Company Agreement of BLX Holdings LLC, at 1.

[24] BLXM LLC Agreement, § 6.01; BLX Holdings LLC Agreement, § 6.01; 32 Dominick LLC Agreement, § 6.01.

[25] BLXM LLC Agreement, § 6.01; BLX Holdings LLC Agreement, § 6.01; 32 Dominick LLC Agreement, § 6.01.

[26] Compl., Ex. E., Letter Re: First Amendment to Limited Liability Company Agreement of BLXM Member LLC; First Amendment to Amended and Restated Limited Liability Company Agreement of 32 Dominick LLC; and First Amendment to Amended and Restated Limited Liability Company Agreement of BLX Holdings LLC, at 1.

[27] Compl., ¶ 29.

sign the amendments, and because the amendments do not implicate a Major Matter, [Extell] has executed the amendments in its capacity as Managing Member of the Companies."[28]

Extell sent a separate letter to BLR and Hemeyer on August 26, 2019 stating that Extell believed efforts by Hemeyer, his business partner, and BLR to acquire the Valeo property "have been contrary to the [LLC] Agreements and have been in bad faith."[29] That letter references an ongoing litigation in Utah state district court (the "Utah Action")[30] where BLR and Hemeyer are "asserting claims seeking title to the Valeo property," and the Complaint states that in the Utah Action Hemeyer seeks "to quiet title in the Valeo property to himself as against BLX Land and to have the Valeo property conveyed to him under various legal theories."[31] The letter cites Section 6.04 of the LLC Agreements, which prohibit Extell, BLR, and their Affiliates from "acquir[ing] any interest, direct or indirect, in the Project" without the consent of the other Member, and states that Hemeyer is an Affiliate of BLR and

---

[28] Compl., Ex. F., Letter Re: First Amendment to Limited Liability Company Agreement of BLXM Member LLC; First Amendment to Amended and Restated Limited Liability Company Agreement of 32 Dominick LLC; and First Amendment to Amended and Restated Limited Liability Company Agreement of BLX Holdings LLC, at 1.
[29] Compl., Ex. G., Letter Re: Cease and Desist Efforts to Acquire and Interest in the Valeo Property ("Cease and Desist Letter"), at 1.
[30] *Extell Development Company et al. v. Van A Hemeyer et al.*, Civil No. 180500147 (Fourth Judicial District Court, Utah).
[31] Cease and Desist Letter, at 1; Compl., ¶ 34.

thus cannot acquire the Valeo property without Extell's consent.[32] The letter asks

BLR and Hemeyer to dismiss their claims in the Utah Action and "disclaim[] [their]

interest in the Valeo property and dismiss[] all requests to obtain an interest in the

Valeo property."[33] The Complaint alleges that BLR and Hemeyer "have refused to

cease and desist their efforts to acquire the Valeo [p]roperty outside of the

Companies and without [Extell's] consent."[34] When BLR and Hemeyer failed to

comply, Extell sought similar relief here.

*D. This Action and Procedural History*

Extell filed this Action on August 28, 2019. The Complaint pleads three

counts against BLR and Hemeyer. Count I is for breach of the LLC Agreements,

asserting that the Valeo property was part of the "Project" when it was identified as

a property to be included in the proposed development, or, in the alternative, upon

the Amendments, and that BLR and Hemeyer continue to "seek to acquire a direct

or indirect interest in the Valeo property" without Extell's consent.[35] Count II

alleges that BLR and Hemeyer breached the implied covenant of good faith and fair

dealing "by conspiring to acquire a direct or indirect interest in the Valeo property

outside the Companies . . . knowing that the Valeo property was identified as a future

---

[32] Cease and Desist Letter, at 1; *see* BLXM LLC Agreement, § 6.04; BLX Holdings LLC Agreement, § 6.04; 32 Dominick LLC Agreement, § 6.04.
[33] Cease and Desist Letter, at 2.
[34] Compl., ¶ 39.
[35] *Id*. ¶¶ 46–48.

8

resort property and is now part of the planned resort development and Project" and, in part, that such attempts by BLR and Hemeyer frustrate the central purpose of the LLC Agreements.[36] Count III asks for a declaratory judgment stating, in essence, that: (1) the Amendments are valid and binding, (2) the Amendments do not implicate Major Matters and did not require BLR's prior approval before becoming effective, (3) the Valeo property is part of the "Project," (4) BLR and Hemeyer are prohibited from acquiring the Valeo property, and (5) BLR and Hemeyer were prohibited from acquiring the Valeo property even prior to the Amendments and such attempts were in violation of the LLC Agreements.[37]

BLR and Hemeyer moved to dismiss, or, in the alternative, to stay this Action on November 1, 2019.[38] I heard Oral Argument on BLR and Hemeyer's Motion on January 30, 2020 and considered the matter submitted for decision on that date.

## II. ANALYSIS

BLR and Hemeyer have moved to dismiss this Action under Chancery Court Rule 12(b)(2) for lack of personal jurisdiction.[39] When faced with a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff bears the burden of showing a basis

---

[36] *Id.*, ¶¶ 60, 62.
[37] *Id.* ¶ 70.
[38] Defs.' Mot. to Dismiss the Verified Complaint, or, in the Alternative, to Stay the Action, D.I. 19.
[39] Defs.' Opening Br. in Support of their Mot. to Dismiss the Verified Complaint, or, in the Alternative, to Stay the Action, D.I. 20 ("Defs.' Opening Br."), at 8.

9

for the court's exercise of jurisdiction over the defendant."[40]  In considering a 12(b)(2) motion, the court employs a two step analysis: "the court must first determine that service of process is authorized by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial justice."[41]  When ruling on a 12(b)(2) motion the court may consider the pleadings, affidavits,[42] and any discovery of record—where no evidentiary hearing has been held, "the plaintiff[] need only make a *prima facie* showing of personal jurisdiction and the record is construed in the light most favorable to the plaintiff."[43]

Extell contends that Delaware's Long Arm Statute provides a statutory basis for this Court's exercise of personal jurisdiction over BLR and Hemeyer.  As to non-residents—such as BLR and Hemeyer—"Delaware's Long Arm Statute requires an in-state act by them 'that sets in motion a series of events which form the basis for

---

[40] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (citing *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318 (Del. Ch. 2003)).

[41] *Id*. (citing *Amaysing Techs. Corp. v. CyberAir Commc'ns., Inc.*, 2005 WL 578972, at *3 (Del. Ch. Mar. 3, 2005)).

[42] Both sides in this Action have filed affidavits in connection with this Motion to Dismiss—some affidavits attach exhibits.  *See* Ranschau Aff. I; Hemeyer Aff.; Supplemental Transmittal Aff. of Beth J. Ranschau, in Support of Defs.' Reply Br. in Further Support of Their Mot. to Dismiss, D.I. 34 ("Ranschau Aff. II"); Aff. of Adam E. Weinacker in Support of Extell DV LLC's Answering Br. in Opp'n to Defs.' Mot. to Dismiss, D.I. 26 ("Weinacker Aff."); Aff. of Gary Barnett in Support of Extell DV LLC's Answering Br. In Opp'n to Defs.' Mot. to Dismiss, D.I. 26 ("Barnett Aff."). Extell has also submitted a declaration of Hemeyer under oath in connection with the Utah Action. *See* Extell DV LLC's Answering Br. in Opp'n to Defs.' Mot. to Dismiss, D.I. 26 ("Extell's Answ. Br."), Ex A., Declaration of Van A. Hemeyer ("Hemeyer Decl.").

[43] *Ryan*, 935 A.2d at 265 (internal citations and quotation marks omitted).

the cause of action before the court.'"[44]    Extell relies exclusively on Section

3104(c)(1) of the Long Arm Statute for statutory jurisdiction.  That section reads:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent . . . [t]ransacts any business or performs any character of work or service in the State . . . .[45]

Our Supreme Court has noted that this statute is a "single act" statute, which

"establish[es] jurisdiction over nonresidents on the basis of a single act done or

transaction engaged in by the nonresident within the state."[46]  "[A] single business

transaction in Delaware 'may supply the jurisdictional basis for suit [but] only with

respect to claims which have a nexus to the designated conduct.'"[47]

In order for this Court to have jurisdiction under the Long Arm Statute, BLR

and Hemeyer must have "transact[ed] . . . business" in Delaware within the meaning

of Section 3104(c).  Extell contends that BLR and Hemeyer transacted business "by

actively participating, along with a Delaware entity [Extell], in the creation and

formation of three Delaware entities [the Companies]."[48]  Extell alleges in briefing

---

[44] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *8 (Del. Ch. July 14, 2008) (quoting *Sears, Roebuck & Co. v. Sears plc*, 752 F.Supp. 1223, 1227 (D. Del. 1990)).
[45] 10 *Del. C.* § 3104(c)(1).
[46] *Eudaily v. Harmon*, 420 A.2d 1175, 1180, n.4 (Del. 1980).
[47] *Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*, 2017 WL 3575712, at *5 (Del. Ch. Aug. 18, 2017), *aff'd sub nom. Marion #2-Seaport Tr. U/A/D/ June 21, 2002 v. Terramar Retail Centers, LLC*, 184 A.3d 1290 (Del. 2018) (quoting *LaNuova D & B, S.p.A v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986)).
[48] Extell's Answ. Br., at 17.

11

that it negotiated the LLC Agreements with BLR (through Hemeyer) for six months in connection with formation of the Companies, and that the parties exchanged numerous drafts.[49] BLR was (and remains) the sole minority member in the Companies, all of which are Delaware LLCs.

"Delaware courts have held consistently that forming a Delaware entity constitutes the transaction of business within Delaware that is sufficient to establish specific personal jurisdiction under Section 3104(c)(1)."[50] Similarly, filing a corporate instrument (even through an agent) constitutes the transaction of business—though Extell has not argued that BLR nor Hemeyer made such a filing, and Hemeyer states in a sworn affidavit that neither he nor BLR was "involved in or had any knowledge of" Extell filing "a Certificate of Formation of Limited Liability Company . . . [or] any annual reports or other necessary filings with the Delaware Secretary of State for [the Companies]."[51] Therefore the *only* basis for jurisdiction under Delaware's Long Arm Statute alleged by Extell is that BLR and Hemeyer negotiated and executed the LLC Agreements in connection with the formation of the Companies, with Hemeyer negotiating on BLR's behalf.[52]

---

[49] *Id*. at 6–7.

[50] *Terramar*, 2017 WL 3575712, at *5.

[51] *Sample v. Morgan*, 935 A.2d 1046, 1057 (Del. Ch. 2007); Hemeyer Aff., ¶¶ 14–15.

[52] Extell also contends that the alleged transaction of business gave rise to Extell's claims in this Action. Extell's Answ. Br., at 18 ("Defendants' transaction of business in Delaware—the negotiation and execution of the Companies' operating agreements—gives rise to [Extell's] current claims against them for breach of the [LLC] Agreements.").

12

*A. Incongruities in the Record Regarding Formation*

As an initial matter, the record is uncertain regarding the formation of the Companies. Extell states in its briefing that BLR and Hemeyer negotiated the LLC Agreements over a six-month period ending in March 2018.[53] However, the culmination of such negotiations as pled by Extell *does not* correspond with the respective establishment dates of the Companies as stated in each LLC Agreement. I note that the Complaint itself is silent as to the period of negotiation, necessitating my venture outside of the Complaint to analyze the crucial timeline of formation.

It is Extell's burden to show jurisdiction, and having submitted that negotiation in connection with formation of Delaware entities is the jurisdictional hook, it is incumbent upon Extell to link such negotiations to formation in response to the 12(b)(2) motion.[54] However, the Complaint and Extell's briefing presents, at best, a murky picture. Because Extell offers no information other than the alleged negotiation period regarding the genesis of Extell and BLR's business relationship, the only reasonable inference is that *no* formal relationship existed until the LLC Agreements were signed and executed on March 14, 2018.[55] Puzzlingly however, the LLC Agreements state that "the Company was established as a Delaware limited

---

[53] *Id.* at 7.

[54] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[55] *See* Compl., ¶14; Extell's Answ. Br., at 7. BLX Holdings' LLC Agreement does mention a Real Estate Purchase and Sale Agreement between Extell Development Company (inferably an Extell affiliate) and BLR, but the record is bereft of any other information regarding that matter. BLX Holdings LLC Agreement, at 5.

liability company . . . by [] the filing of the Certificate of Formation of the Company filed with the Secretary of State of the State of Delaware" on the following dates:

| BLXM | January 11, 2018[56] |
|---|---|
| BLX Holdings | October 10, 2017[57] |
| 32 Dominick | May 3, 2013[58] |

Notably, all of these dates occurred *before* the alleged execution of the LLC Agreements, and, per the record, the inception of Extell and BLR's formal business relationship. Additionally, Hemeyer has submitted that he was not provided drafts of the LLC Agreements until *after* formation of the Companies.[59] Drawing all reasonable inferences in favor of Extell, as I must, I nonetheless remain unable to understand BLR's role in formation of the Companies, which is the issue crucial to jurisdiction. If the parties' relationship had not yet crystallized, yet the Companies had been formed—by Extell per Hemeyer—how could BLR and Hemeyer have transacted business in forming the Companies?[60]

---

[56] BLXM LLC Agreement, at 5.
[57] BLX Holdings LLC Agreement, at 5.
[58] 32 Dominick LLC Agreement, at 5.
[59] Hemeyer Aff., ¶ 18.
[60] *See id*. ¶ 11.

*B. The Extent of the Participation Alleged.*

As just discussed, the Defendants' role in the Companies' formation is unclear. Even if I assume that the Defendants helped to form the Companies via negotiations, another question remains. Did their actions constitute the transaction of business in Delaware? In arguing that the Defendants' participation in the creation of the Companies was sufficient to constitute the transaction of business in Delaware, Extell relies heavily on *Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002.*[61] *Terramar* involved a suit by Terramar Retail Centers. LLC ("Terramar"), holder of a 75% interest in Seaport Village Operating Company, LLC ("Seaport"), a Delaware limited liability company based in San Diego, California, against Marion # 2–Seaport Trust U/A/D/ June 21, 2002 (the "Trust"), holder of the remaining 25% interest in Seaport and affiliated with a non-party individual, Michael Cohen.[62]

Seaport was formed pursuant to a recapitalization project.[63] Cohen formed the Trust in order to hold his 25% membership interest in Seaport.[64] The members of Seaport entered into an operating agreement which stated that they "wish[ed] to form a Delaware limited liability company for the purpose and on the terms and

---

[61] 2017 WL 3575712, at *6 (Del. Ch. Aug. 18, 2017), *aff'd sub nom. Marion #2-Seaport Tr. U/A/D/ June 21, 2002 v. Terramar Retail Centers, LLC,* 184 A.3d 1290 (Del. 2018).
[62] *Id*. at *1.
[63] *Id*. at *2.
[64] *Id*.

15

conditions set forth herein," that Seaport was "formed as a limited liability company pursuant to the provisions of the [Delaware Limited Liability Company] Act," and that Seaport's existence "commence[d] upon the filing for record of the Company's Certificate with the Delaware Secretary of State."[65] Terramar sought a declaration regarding the propriety of certain of its actions under Seaport's operating agreement to which the Trust was a party.[66]

The Trust moved to dismiss for lack of jurisdiction; in response, Terramar argued that Long Arm jurisdiction was proper under Section 3104(c)(1) and that the Trust transacted business in Delaware through the formation of Seaport and the negotiation of its operating agreement.[67] Because Section 3104(c)(1) confers specific—not general—jurisdiction "there must be a nexus between the formation of the Delaware entity and the cause of action asserted in the lawsuit" sufficient to cause jurisdiction to attach.[68] Vice Chancellor Laster noted two factors that this Court should consider in determining whether a sufficient nexus exists. The first— and principal—factor is the "factual relationship between the formation of the Delaware entity and the cause of action."[69] The second factor is "the degree of involvement that the defendant had in the formation of the entity," noting that "as a

[65] *Id*. (internal alterations omitted).
[66] *Id*. at *1.
[67] *Id*. at *5.
[68] *Id*. at *6.
[69] *Id*.

defendant's involvement in the underlying transaction and the formation of the Delaware entity becomes more attenuated, it becomes more difficult to hold that the defendant transacted business in the state."[70]

### 1. Extent of the Factual Relationship Between the Formation of the Companies and the Causes of Action Asserted

*Terramar*'s first—and "principal"—factor in "determining whether a sufficient nexus exists . . . is the extent of the factual relationship between the formation of the Delaware entity and the cause of action."[71]  In that vein, "[t]his court has held that a cause of action is sufficiently related to the entity's formation if the formation 'set in motion a series of events which form the basis for the cause of action before the court.'"[72]

*Terramar* referenced the seminal case *Papendick v. Bosch*[73] in discussing the required showing to demonstrate a sufficient relationship between the formation of a Delaware entity and a claim for breach of contract.  Bosch, a German company, entered into a contract with Papendick that required Bosch to pay a finder's fee to Papendick if Bosch successfully acquired the Borg-Warner Corporation, and Bosch later acquired Borg-Warner and formed a Delaware corporation as the acquisition vehicle.  Bosch refused to pay Papendick the finder's fee, Papendick sued for breach

---

[70] *Id*. at *8.
[71] *Id*. at *6
[72] *Id*. (quoting *Microsoft Corp. v. Vadem, Ltd.*, 2012 WL 1564155, at *7 (Del. Ch. Apr. 27, 2012)).
[73] 410 A.2d 148 (Del. 1979), *cert denied*, 446 U.S. 909 (1980).

of contract, and Bosch moved to dismiss for lack of personal jurisdiction. The Delaware Supreme Court, reversing the Superior Court, found that Bosch "created a Delaware corporation 'as an integral part of its total transaction with [Borg-Warner] to which the plaintiff's instant cause of action relates.'"[74] "[U]nder those circumstances, Bosch had 'purposefully avail[ed] itself of the benefits and protections of the laws of the State of Delaware for financial gain in activities related to the cause of action.'"[75] Therefore, a Delaware court could exercise jurisdiction over Bosch in Papendick's breach of contract suit.

*Terramar* noted that "[f]ollowing *Papendick*, courts in Delaware have held that a sufficient nexus exists between the formation of an entity and claims to enforce the constitutive documents of that entity."[76] Specific jurisdiction under the Long Arm Statute exists "where the formation of the Delaware entity is 'part of [a] total transaction . . . to which the plaintiff's . . . cause of action relates.'"[77] In *Papendick*, the contract for the finder's fee and the formation of the Delaware entity "were separate parts of the total transaction, yet the formation of a Delaware entity provided a sufficient basis to exercise personal jurisdiction over the contractual counterparty for purposes of enforcing the contract."[78] The Vice Chancellor noted,

---

[74] *Terramar*, 2017 WL 3575712, at *7 (quoting *Papendick*, 410 A.2d at 152).
[75] *Id*. (quoting *Papendick*, 410 A.2d at 152).
[76] *Id*.
[77] *Id*. (quoting *Papendick*, 410 A.2d at 152).
[78] *Id*.

sensibly, that when the contract sought to be enforced is the constitutive document that governs the Delaware entity the relationship—between the claim and the entity's formation—"is significantly closer. Indeed it is as close as it can be."[79] Accordingly, *Terramar* found the first factor was met, and the bar was quite easily cleared because the cause of action alleged was a breach of the entity's constitutive document.[80]

Extell argues that *Terramar* is "on point" with the circumstances before me and must control the outcome of the instant Motion.[81] Referring to *Terramar*'s holding that the relationship between a claim to enforce a constitutive document and the formation of the entity is "as close as it can be," Extell argues: "[t]hat is exactly what this case involves."[82] BLR and Hemeyer disagree, arguing: "in *Terramar*, the 'claims under the Operating Agreement implicate[d] core issues discussed by the parties when negotiating the underlying transaction that gave rise to [Seaport's] formation [in Delaware].' There is no similar allegation here. Instead at issue are a series of purported Amendments to the [LLC] Agreements, which were proposed by

---

[79] *Id*. Vice Chancellor Laster also noted that "a claim to enforce the entity's constitutive document necessarily implicates the special interest that a sovereign has in adjudicating cases involving the internal affairs of entities created under its laws." *Id*.
[80] *Id*.
[81] Extell's Answ. Br., at 20.
[82] *Id*., at 21.

19

[Extell] in New York to Defendants in Utah, long after [Extell] made the decision to incorporate in Delaware."[83]

The record at this stage reflects that the factual relationship between the claims asserted here and the LLC Agreements deviates from *Terramar*'s template. Here, Extell brings certain claims to enforce the Companies' constitutive documents. Extell pleads in the alternative that either the Valeo property was part of the "Project" defined in each of the LLC Agreements—the constitutive document of each Company—or that the Amendments it unilaterally adopted over a year after execution of the LLC Agreements specifically prohibit the Defendants' actions here. As in *Terramar*, the business deal that Extell seeks to enforce—the building of a ski resort—was embodied in the LLC Agreements. But the nexus here is weaker than in *Terramar* because the gravamen of the Complaint concerns the validity of Extell's later Amendments rather than the transaction that was embodied by the LLC Agreements. Though "[t]here is no doubt that alternative pleading, if clearly set forth as such, is permissible," Extell's alternative pleading here leaves some of its claims—those which appear to be facially strongest—with a weak nexus to the

---

[83] Defs.' Reply Br. in Support of their Mot. to Dismiss the Verified Complaint, or, in the Alternative, to Stay the Action, D.I. 33 ("Defs.' Reply Br."), at 11–12 (quoting *Terramar*, 2017 WL 3575712, at *10 (internal citations omitted)). I note that the Companies are limited liability companies, not corporations, but I understand incorporation in this context to be used synonymously with formation.

allegedly formational acts.[84] The Amendment-centric claims only implicate the LLC Agreements insofar as I would need to interpret the defined term "Major Matter" and whether the Amendments were "Major Matters." Extell also pleads a breach of the implied covenant of good faith and fair dealing, which inheres in all contracts, and is not unique to these formative documents.

### 2. Degree of BLR and Hemeyer's Involvement in Formation

*Terramar*'s second factor— the degree of involvement that the defendants had in the formation of the entity—presents a second, and to my mind, more important, distinction between the facts here and those in *Terramar*. In that case the defendant specifically elected Delaware as the formative jurisdiction.[85] The Seaport members explicitly stated in the LLC agreement that they "wish[ed] to form a Delaware limited liability company for the purpose and on the terms and conditions set forth herein," and that Seaport was "formed as a limited liability company pursuant to the provisions of the [Delaware Limited Liability Company] Act."[86] Here, the record, per the Defendants, is precisely contrary—they aver that they were unaware of the Companies' state of formation.

---

[84] *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 659 (Del. Ch. 2012) (quoting *Halliburton Co. v. Highlands Ins. Group, Inc.*, 811 A.2d 277, 280 (Del. 2002)); *see* Ch. Ct. R. 8(e).
[85] *Terramar*, 2017 WL 3575712, at *10 ("Through Cohen, the Trust consciously chose to incorporate the Company as a Delaware entity and to embody core deal terms in the Company's governing documents, including terms that implicated the internal affairs of the Company.").
[86] *Id*. at *2.

As explained in *Terramar*, as BLR and Hemeyer's involvement in the underlying transaction and the formation of the Companies "becomes more attenuated, it becomes more difficult to hold that [BLR and Hemeyer] transacted business in [Delaware]."[87] Extell alleges that it negotiated provisions of the LLC Agreements with BLR and Hemeyer. Presumably, this includes the contractual restriction on land acquisition at issue here. Importantly, there are only two members of each Company, so, notwithstanding BLR's minority stake, its role in the negotiations was, I presume, substantial.[88] Hemeyer, however, maintains that he and BLR had *no role* in the formation of the Companies *in Delaware*, and in fact that the Defendants were ignorant of the intent to form the entities in Delaware until after the fact.[89] In support, Hemeyer's sworn affidavit states that had did not receive drafts of the LLC Agreements until *after* the Companies had already been formed.[90] If that is the case, the fundamental proposition of *Papendick* and its progeny—that having "purposefully avail[ed] itself of the benefits and protections of the laws of the State of Delaware for financial gain in activities related to the cause of action," a party cannot thereafter escape jurisdiction—is not applicable.[91] Because it becomes more

---

[87] *Id*. at *8.
[88] *See EBG Holdings LLC v. Vredezicht's Gravenhage,* 2008 WL 4057745, at *6 (Del. Ch. Sept. 2, 2008) (holding a 2.5% equity holder's role in formation of LLC "too attenuated" to support jurisdiction under the Long Arm Statute).
[89] Hemeyer Aff., ¶¶ 11, 14.
[90] *Id.*, ¶ 18.
[91] *Papendick v. Bosch*, 410 A.2d 148, 152 (Del. 1979).

difficult to hold that a defendant transacted business the more attenuated their involvement in the underlying transaction and the formation of the entity, "[t]his court has declined to exercise personal jurisdiction over defendants who were not meaningfully involved in structuring the underlying transaction or negotiating the terms of the deal."[92]

In that light, consider the situation where a minority member negotiates certain provisions of an LLC agreement but is both indifferent to and unaware of the controller's intent to form the entity in any particular jurisdiction. The controller chooses Delaware, unbeknownst to the minority member until after the fact. The minority member is then sued in Delaware for breach of a contractual provision of the LLC agreement. The sole justification for jurisdiction asserted is the transaction of business in Delaware in the negotiation of the agreement that led to formation of the Delaware entity. In such circumstances, I think, it is fair to conclude that the minority member neither took advantage of Delaware as a locus for the formation of the entity nor meaningfully participated in the act that constitutes the transaction of business in this State, notwithstanding its negotiation of certain provisions of the formative document. To the extent this implies a lack of jurisdiction here, however, I must not decide that question based upon a hypothetical or in an advisory manner.

---

[92] *Terramar*, 2017 WL 3575712, at *8.

Here, the only allegation lodged by Extell that BLR and Hemeyer participated in the formation of the Companies is that they "engag[ed] in months'-long negotiations over the terms of those entities' operating agreements."[93] To the extent that negotiation involved the terms that Plaintiff alleges the Defendants breached, I note, those terms do not relate to formative entity matters, but instead are bespoke contractual duties that could have been placed in a contract outside the LLC Agreement.[94] Nevertheless, Hemeyer has submitted a sworn affidavit that BLR had no knowledge of the decision to form the Companies as Delaware LLCs or of the filing of certificates of formation for any of the Companies.[95] Extell, for its part, cites another sworn statement from Hemeyer, this time in the Utah Action, that

---

[93] Extell's Answ. Br., at 22.

[94] Relevant in determining whether this Court may exercise jurisdiction under Section 3104(c)(1) is the extent to which Extell pleads breaches of the LLC Agreements that implicate "the fundamental attributes and workings of [] Delaware entit[ies]." *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *14 (Del. Ch. Sept. 2, 2008). *EBG Holdings* noted that LLC agreements are "conceptual hybrid[s]" because on one hand they are similar to certificates of incorporation, because they are foundational documents that control the governance of the entity, and thus "related to the very nature of the entity, and manipulation of its governance provisions could qualify as a jurisdictional act." *Id*. On the other hand, Delaware law has emphasized freedom of contract when dealing with LLC agreements, and "LLC agreements . . . may contain provisions that do not implicate the fundamental attributes and workings of a Delaware entity. Some provisions relate more to the respective rights and obligations of members of a particular LLC, and the alleged breach of those provisions by a minority member of an LLC may not satisfy § 3104(c)(1)." *Id*. Here, while BLR and Hemeyer's alleged conduct of business involves the respective formational documents of the Companies, the alleged breaches of the LLC Agreements do not implicate the fundamental attributes and workings of the Companies. Quite the opposite. The primary issue regarding the LLC Agreements—the definition of "Project"— primarily implicates restrictions on outside activities by the Companies' Members. Extell alleges that the Defendants promised not to compete with the Companies for certain property in the Delaware law LLC Agreements, and then allegedly purchased such property, in Utah, after formation, in a transaction with *no alleged nexus* to Delaware.

[95] Hemeyer Aff., ¶¶ 11, 14.

24

states: "Extell and BLR initially negotiated the [LLC] Agreements in connection with the *formation* of the Companies, and Extell and BLR amended those [LLC] Agreements in [sic] March 14, 2018."[96] Extell does not otherwise attempt to rebut the sworn statement that BLR was unaware that Delaware would be Extell's choice for the formation of the Companies. There is no allegation that Hemeyer or BLR pointed out, debated, or did anything with respect to the decision to form the Companies as Delaware entities. Hemeyer's affidavit in this matter has not been rebutted in that regard. Therefore, the record as currently constituted *does not* show that "[BLR] formed [the Companies], or participated in the formation in a meaningful fashion" nor that "[BLR] caused [the Companies] to be formed as [] Delaware LLCs, as opposed to some other type of entity."[97]

BLR was the only other entity with whom Extell negotiated. Employing the inference favorable to the Extell, I assume that BLR's contribution to negotiations was substantial. Even accepting BLR and Hemeyer's submissions that they did not specifically negotiate that the Companies would be formed in Delaware, I may assume that they contributed to the contractual provisions they are charged with breaching, which were embodied in the LLC Agreements. But it is not the negotiation of an LLC agreement alone that constitutes the transaction of business—

---

[96] Hemeyer Decl., ¶ 7 (emphasis added).
[97] *EBG Holdings*, 2008 WL 4057745, at *7.

25

it is the choice to take business advantage of Delaware's law and sovereignty by forming the business here.

### III. CONCLUSION

To reiterate, Extell's claims allege breach of the Companies' constitutive documents—the LLC Agreements—or at least implicate terms of the LLC Agreements regarding the propriety of the Amendments to those agreements unilaterally undertaken by Extell. The record is unclear as to the extent of the Defendants' role in negotiating the the LLC Agreements. Even allowing the inference of Defendants' substantial negotiation of their obligations in the LLC Agreements, the record as now constituted suggests that the Defendants were not even aware of Extell's decision to take advantage of Delaware as a locus of entity creation.

I am vested with discretion in shaping the procedure under which a 12(b)(2) motion is resolved.[98] This includes discretion to delay decision until further discovery is completed.[99] In my analysis, I have relied heavily on the Hemeyer affidavit, stating that BLR and Hemeyer not only did not negotiate the locus of formation of the Companies, but were in fact unaware that Extell would choose

---

[98] *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991).
[99] *Id.*; *see Leach v. Solar Bldg. Sys., Inc.*, 1998 WL 83480, at *2 (Del. Ch. Feb. 17, 1998) ("Given the presently sparse (and in some respects contradictory) factual record, the Court concludes that it is necessary to supplement the record on three issues . . . .").

Delaware for that purpose. Based on the record as currently constituted, it is my intention to dismiss this matter for lack of jurisdiction, unless Extell seeks jurisdictional discovery to supplement the record on this issue.[100] If Extell elects to proceed with jurisdictional discovery, it should so move within two weeks. I will withhold an Order pending that time.

---

[100] Because of my decision here, I have not done the due process analysis which is the required second step in consideration of a motion to dismiss under Rule 12(b)(2). The discovery suggested would be helpful in consideration of that issue as well, should it become necessary.