**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| IN RE P3 HEALTH GROUP HOLDINGS, LLC | ) ) | Consol. C.A. No. 2021-0518-JTL |

**MEMORANDUM OPINION**

Date Submitted: July 13, 2022
Date Decided: October 14, 2022

Bruce E. Jameson, Corinne Elise Amato, Eric J. Juray, Elizabeth Wang, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Craig Carpenito, Richard H. Walker, Samuel C. Cortina, KING & SPALDING LLP, New York, New York; *Counsel for Hudson Vegas Investment SPV, LLC*.

William M. Lafferty, Kevin M. Coen, Ryan D. Stottmann, Sara Toscano, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Counsel for Jessica Puathasnanon and P3 Health Group Holdings, LLC*.

Kevin R. Shannon, Christopher N. Kelly, Daniel M. Rusk IV, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; William K. Kane, J, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Chicago, Illinois; James C. Wald, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Los Angeles, California; *Counsel for Chicago Pacific Founders Fund, L.P., CPF P3 Splitter, LLC, Greg Kazarian, Larry Leisure, Mary Tolan, and Sameer Mathur*.

Elena C. Norman, Paul J. Loughman, Lakshmi A. Muthu, Alberto E. Chávez, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware; *Counsel for Sherif W. Abdou, Amir Bacchus, Gary Garrett, Lorie Glisson, Taylor Leavitt, and Tom Price*.

Steven T. Margolin, Samuel L. Moultrie, Corrinne R. Moini, GREENBERG TRAURIG, LLP, Wilmington, Delaware; *Counsel for Foresight Acquisition Corporation, Foresight Acquisition Corporation II, and Greg Wasson*.

**LASTER, V.C.**

Greg Wasson formed a Delaware corporation that went public as a special purpose acquisition company ("SPAC"). At the time, Wasson had been in discussions for several months with representatives of a target company about a merger with the to-be-launched SPAC. After the launch, the discussions continued. To effectuate the eventual merger, Wasson formed a second Delaware entity—a limited liability company and subsidiary of the SPAC. When the merger closed, it took the form of a forward triangular merger between the target company and the LLC subsidiary of the SPAC.

In this action, the plaintiff has sued Wasson based on actions he took in connection with the merger. Wasson has moved to dismiss those claims both on the merits and on the theory that he is not subject to personal jurisdiction in Delaware. This decision denies the latter motion.

A proper exercise of personal jurisdiction must satisfy two requirements. First, there must be a valid means of serving the defendant with a summons. Second, the exercise of jurisdiction over the defendant must comply with minimum standards of due process.

Under the Delaware Long Arm Statute, a party may serve any person who directly or through an agent "[t]ransacts any business or performs any character of work or service in the State . . . ." 10 *Del. C.* § 3104(c)(1). The formation of a Delaware entity constitutes the transaction of business in the State and is sufficient to support the service of process for purposes of claims that have a nexus with the formation of the Delaware entity.

Wasson's formation of two Delaware entities constitutes the transaction of business within the State of Delaware. Each is sufficient independently to support the service of

process on Wasson for purposes of a claim relating to the forward triangular merger among the target company, the LLC, and the SPAC.

The exercise of personal jurisdiction over Wasson comports with minimum standards of due process. The choice to form a Delaware entity creates a significant contact with the State. An individual who causes the formation of a Delaware entity for the purpose of engaging in a transaction must expect to be subject to suit in Delaware for claims based on the resulting transaction. That has been the law for over forty years. *Papendick v. Bosch*, 410 A.2d 148, 152 (Del. 1978).

The complaint accordingly supports a reasonable inference that personal jurisdiction exists over Wasson. His jurisdictional motion is denied.

## I.  FACTUAL BACKGROUND

The facts are drawn from the plaintiff's complaint and the documents it incorporates by reference. At this stage of the proceedings, the complaint's allegations are assumed to be true, and the plaintiff receives the benefit of all reasonable inferences.

### A.  The Company

P3 Health Group Holdings, LLC ("P3" or the "Company") is a Delaware limited liability company that engages in the business of population healthcare management, a concept that involves providing patient-members with better and more cost-effective long-term healthcare. Chicago Pacific is a private equity fund focused on investments in the healthcare industry. Chicago Pacific provided the original capital for the Company and has exercised control over the Company since its founding. One of the rights that Chicago

2

Pacific enjoys is the ability to appoint managers to the Company's governing board (the "Chicago Pacific Managers").

Hudson Vegas Investment SPV, LLC ("Hudson") subsequently invested in the Company. Hudson became the Company's second largest investor after Chicago Pacific. Hudson also enjoys is ability to appoint managers to the Company's governing board (the "Hudson Managers").

### B.     The Original Deal Structure

In August 2020, the Company began exploring ways to access the public markets. In September, several members of the Company's board of managers (the "Board") held a Zoom meeting on that subject. The meeting materials listed a potential combination with another Chicago Pacific portfolio company as one of the paths available to the Company.

On November 1, 2020, Wasson met with three members of the Board. Wasson is a successful executive who conducts business through his family office, Wasson Enterprises. For purposes of this decision, the distinction between Wasson and his family office is not important, so this decision refers to Wasson.

During the meeting, Wasson and the Board members discussed the benefits of the Company going public by merging with a SPAC. One possibility was for Wasson to create a SPAC, use it to raise public capital through an initial public offering, and then cause the SPAC to merge with the Company.

By late November 2020, Wasson and the Company were discussing a potential three-way merger involving the Company, a SPAC that Wasson would form, and another portfolio company controlled by Chicago Pacific (the "Original Deal Structure"). Wasson

3

and Chicago Pacific entered into a non-disclosure agreement, exchanged confidential information, and prepared detailed financial models. By December, Wasson was ready to move forward with the Original Deal Structure.

In early January 2021, the Chicago Pacific Managers proposed to the Board that the Company pursue a transaction using the Original Deal Structure. Around the same time, Wasson formed a Delaware corporation named Foresight Acquisition Corp. Later that month, Foresight filed its Registration Statement on Form S-1 and raised capital through an initial public offering. After the IPO, Foresight's shares traded publicly on NASDAQ under the ticker symbol "FORE."

## C.    The New Deal Structure

Under the Company's LLC agreement, any transaction between the Company and another affiliate of Chicago Pacific required Hudson's approval. Because the Original Deal Structure contemplated a transaction involving another Chicago Pacific portfolio company, it required Hudson's approval. Hudson did not like the economics of the Original Deal Structure and withheld its consent.

After Hudson vetoed the Original Deal Structure, Wasson, the Company, and Chicago Pacific began working on an alternative. They decided to pursue a merger that only would involve the Company and Foresight (the "New Deal Structure"). The New Deal Structure would not involve the other Chicago Pacific portfolio company, thereby avoiding the obvious trigger for Hudson's consent right. But Wasson, Chicago Pacific, and the Company remained focused on combining the Company and the other Chicago Pacific

4

portfolio company. They anticipated taking that step in a follow-on transaction, after the merger between the Company and Foresight removed Hudson's consent right.

By late March 2021, Foresight and Chicago Pacific had negotiated a letter of intent that implied a value for the post-transaction entity of $3.3 billion. It also contemplated a transaction in which the Company would not survive the merger, and the governing agreements of the post-transaction entity would not provide Hudson with the same rights and protections that Hudson enjoyed under the Company's governing agreements. After seeing the proposed letter of intent, Hudson objected to the transaction. The Board approved it anyway. In the ensuing weeks, the Chicago Pacific Managers and the Company's officers moved forward with the New Deal Structure.

In early May 2021, Foresight lowered its valuation of the Company by approximately one third. Chicago Pacific and the Company's officers moved forward at the lower valuation without discussing it with the full Board. To grease the skids, Wasson gave the lucrative opportunity to participate in another Wasson SPAC to two of the Chicago Pacific Managers.

**D.    The Board Approves The Merger.**

On May 20, 2021, the Company noticed two meetings at which the Board would receive information about a merger between the Company and Foresight. The first meeting was scheduled for the next day, on May 21. The second meeting was scheduled for two days after that, on May 23. The plan was to vote on the transaction on May 23.

The email included an executive summary describing the transaction, a deck explaining the steps involved in implementing it, and the current draft of the merger

5

agreement. The materials described a complex "Up-C" structure that would be used to effect the merger. The materials noted that the Company would merge with and into a newly formed LLC and subsidiary of Foresight ("NewCo"). The entity surviving the merger would be NewCo.

Because of rising tensions over funding and unresolved questions surrounding the post-transaction entity, the Board delayed the vote on the deal. The Board then scheduled an additional meeting for 7:00 a.m. on May 25, 2021.

During the additional meeting, a majority of the Board voted in favor of a forward triangular merger in which the Company would merge with and into Newco (the "Merger"). The Hudson Managers abstained.

## E.    This Litigation

On June 11, 2021, Hudson filed this lawsuit and sought a preliminary injunction against the Merger. The parties conducted expedited discovery and briefed Hudson's preliminary injunction application.

On September 14, 2021, the court denied Hudson's request for a preliminary injunction blocking the Merger. The court held that Hudson had failed to show a reasonable likelihood of success on any claim that could not be addressed after the closing of the Merger. Hudson therefore had failed to make the showing of irreparable harm necessary to support the issuance of a preliminary injunction.

On December 3, 2021, the Merger closed. Hudson then filed an amended complaint.

6

The amended complaint contains many counts. Among them, Count XI asserts that Wasson intentionally and improperly interfered with Hudson's rights under the Company's LLC agreement.

Wasson has moved to dismiss Count XI on the merits. He also contends that he is not subject to personal jurisdiction in this court. This decision addresses the latter issue.

## II.  LEGAL ANALYSIS

Wasson has moved for dismissal under Rule 12(b)(2) for lack of personal jurisdiction. "When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant." *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

Under Delaware law, the exercise of personal jurisdiction has two requirements. *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012). First, the plaintiff must identify a valid method of serving process. Second, the exercise of personal jurisdiction must rely on sufficient minimum contacts between the defendant and Delaware such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### A.  Service of Process

Under the Delaware Long Arm Statute, a party may serve process on and a Delaware court may exercise personal jurisdiction over any nonresident who, "in person or through an agent . . . [t]ransacts any business or performs any character of work or service in the State . . . ." 10 *Del. C.* § 3104(c)(1). A person who has engaged in such an act has

7

established "a legal presence within the State" and "thereby submits to the jurisdiction of the Delaware courts." *Id.* § 3104(b).

Section 3104 is a "single act" statute. *Eudaily v. Harmon*, 420 A.2d 1175, 1180 (Del. 1980). Therefore, a "single transaction is sufficient to [authorize service and] confer jurisdiction where the claim is based on that transaction." *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 978 (Del. Ch. 2000) (cleaned up); *accord LaNuova D & B, S.p.A v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986) (explaining that the transaction of business only supports jurisdiction "with respect to claims which have a nexus to the designated conduct.").

The creation of a Delaware entity constitutes the transaction of business in the state and is sufficient to support service of process under Section 3104(c)(1).[1] The formation of

---

[1] *See, e.g.*, *BrandRep, LLC v. Ruskey*, 2019 WL 117768, at *2 (Del. Ch. Jan. 7, 2019) (concluding that the formation of a Delaware LLC was a sufficient act to support service of process and exercise of personal jurisdiction in Delaware over a factually related claim for misappropriating trade secrets and unfair competition); *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*, 2017 WL 3575712, at *5 (Del. Ch. Aug. 18, 2017) ("Delaware courts have held consistently that forming a Delaware entity constitutes the transaction of business within Delaware that is sufficient to establish specific personal jurisdiction under Section 3104(c)(1)."), *aff'd*, 184 A.3d 1290 (Del. 2018); *In re Mobilactive Media, LLC*, 2013 WL 297950, at *28 (Del. Ch. Jan. 25, 2013) (finding that § 3104(c)(1) was satisfied where the defendant incorporated Delaware entities for the purpose of accomplishing one of the challenged acts); *Conn. Gen. Life Ins. Co. v. Pinkas*, 2011 WL 5222796, at *2 (Del. Ch. Oct. 28, 2011) (explaining that "a single act of incorporation, if done as part of a wrongful scheme, will suffice to confer personal jurisdiction under § 3104(c)(1)"); *EBG Hldgs. LLC v. Vredezicht's Gravenhage 109 BV*, 2008 WL 4057745, at *6 (Del. Ch. Sept. 2, 2008) ("[T]he incorporation and operation of a Delaware subsidiary constitutes the transaction of business under § 3104(c)(1)."). *See generally* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial*

a Delaware entity also invariably requires the filing of a certificate with the Delaware Secretary of State, which constitutes a jurisdictional act sufficient to support service of process under Section 3104(c).[2]

Because Section 3104(c)(1) confers specific, not general, jurisdiction, there must be a nexus between the Delaware act and the conduct forming the basis of the suit. *See Mobilactive Media*, 2013 WL 297950, at *28. For example, a sufficient nexus will exist if the formation of the Delaware entity was "an integral component of the total transaction . . . to which the plaintiff's instant cause of action relates." *Papendick*, 410 A.2d at 152. A sufficient nexus also will exist if the formation of the entity is part of a larger wrongful scheme. *See Pinkas*, 2011 WL 5222796, at *2 ("[A] single act of incorporation, if done as part of a wrongful scheme, will suffice to confer personal jurisdiction under § 3104(c)(1)."). Those possibilities are illustrative, not exclusive.

The allegations of the complaint support an inference that Wasson caused Foresight

---

*Practice in the Delaware Court of Chancery* § 3.04[c][4], at 3-101 (2d ed. & Supp. 2018) (collecting cases) [hereinafter Wolfe & Pittenger].

[2] *See, e.g.*, *Terramar*, 2017 WL 3575712, at *5 ("Delaware courts similarly have found that making an entity-related filing . . . constitutes the transaction of business in Delaware that is sufficient to establish specific personal jurisdiction under Section 3104(c)(1)."); *Matthew*, 56 A.3d at 1027–28 ("Filing a certificate of cancellation is the transaction of business in Delaware within the meaning of § 3104(c)(1)."); *Sample v. Morgan*, 935 A.2d 1046, 1057 (Del. Ch. 2007) (Strine, V.C.) (holding that where a party prepared and sent a certificate of amendment to be filed in Delaware, that party "directly transacted business in Delaware for purposes of § 3104(c)(1)"); *see also Lake Treasure Hldgs., Ltd. v. Foundry Hill GP LLC*, 2013 WL 6184066, at *3 (Del. Ch. Nov. 21, 2013) ("The filing of a UCC financing statement can be sufficient under § 3104(c)(1) because Delaware's long arm statute is a single-act statute.")

9

to be formed as a Delaware entity to engage in a transaction with the Company. When Wasson caused Foresight to be formed in January 2021, he had been in discussions with Chicago Pacific and the Company about a transaction since November 2020. They had entered into a non-disclosure agreement, exchanged confidential information, and modeled a transaction based on the Original Deal Structure. After Hudson vetoed the Original Deal Structure, Wasson worked with Chicago Pacific and the Company to develop the New Deal Structure. Wasson then caused NewCo to be formed as a Delaware entity to engage in a transaction with the Company. The Merger ultimately closed using the New Deal Structure. That series of events establishes a sufficient nexus to connect the formation of the Company and NewCo to the Merger and Hudson's claim.

In response, Wasson relies on cases which stand for the proposition that mere ownership of stock in a Delaware corporation is not a sufficient contact with the State of Delaware. *See, e.g.*, *Crescent/Mach I Partners, L.P.*, 846 A.2d at 975. But Wasson did not merely own equity in Foresight. He caused both Foresight and NewCo to be formed so that they could engage in the Merger at issue in this litigation.

Wasson also cites authorities recognizing that merely forming a Delaware entity, without more, will not subject a person to jurisdiction in Delaware. *See Lone Pine Res., LP v. Dickey*, 2021 WL 2311954, at *5 (Del. Ch. June 7, 2021). That principle is the converse of the requirement that there must be some nexus between the formation of the Delaware entity and the cause of action. Without a nexus, the "mere formation of a Delaware entity, without more, is insufficient for this Court to exercise jurisdiction." *Id.* In this case, a sufficient nexus exists.

10

**B.      Due Process**

Once a plaintiff has identified a valid method of serving process, the court must assess "whether [the defendant] engaged in sufficient minimum contacts with Delaware to require it to defend itself in the courts of this State consistent with the traditional notions of fair play and justice." *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 440 (Del. 2005) (internal quotation marks omitted). In addition to the defendant's contacts with the state, relevant factors include "the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief . . . ; [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies . . . ." *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 220 (Del. 1982) (citations omitted) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The act of forming a Delaware entity creates a sufficient contact with this state to render the exercise of jurisdiction on that basis consistent with principles of due process for purposes of claims that have the requisite nexus to the formation of the entity. *Metro Storage Int'l LLC v. Harron*, 2019 WL 3282613, at *26 (Del. Ch. July 19, 2019). Having caused the formation of two Delaware entities for the purpose of completing the Merger, Wasson should have "reasonably anticipated . . . that his . . . actions might result in the forum state exercising personal jurisdiction over him in order to adjudicate disputes arising from those actions." *In re USACafes, L.P. Litig.*, 600 A.2d 43, 50–51 (Del. Ch. 1991); accord *Hamilton P'rs v. Englard*, 11 A.3d 1180, 1198–99 (Del. Ch. 2010).

11

### III.     CONCLUSION

Wasson is subject to personal jurisdiction in Delaware for purposes of the claim asserted in this case. His motion to dismiss this action pursuant to Rule 12(b)(2) is denied.